**Pearl H. STEFFENSEN, Plaintiff and Appellant,**

v.

**SMITH'S MANAGEMENT CORPORATION, Defendant and Appellee.**

No. 910210–CA.

Court of Appeals of Utah.

Oct. 29, 1991.

---

**484**

Richard B. McKeown and Bradley H. Parker, Salt Lake City, for plaintiff and appellant.

Christopher A. Tolboe, Salt Lake City, for defendant and appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

This is an appeal from a jury verdict in a negligence action. Plaintiff Pearl Steffensen was injured in defendant Smith's Management Corporation's ("Smith") grocery store by a shoplifter attempting to flee from the store's management. The jury found Smith was negligent, but the negligence was not the proximate cause of Mrs. Steffensen's injury. On appeal, Mrs. Steffensen asserts the trial court improperly: (1) ruled Smith's failure to train its employees as to the appropriate methods to deal with shoplifters or to deter shoplifting was not, as a matter of law, the proximate cause of Mrs. Steffensen's injury; (2) charged the jury on the law of foreseeability; and (3) excluded certain expert testimony. We affirm.

## FACTS

On March 2, 1987, Bradley Burnett entered a Smith's grocery store to shoplift beer and cigarettes. Gary Canham, the store's front-end manager, observed Mr. Burnett take beer and cigarettes from the store's shelves. As Mr. Burnett walked toward the front of the store, Mr. Canham suspected Mr. Burnett might attempt to leave the store without paying for the merchandise. Mr. Canham immediately informed Paul Rompus, Smith's Drug King manager, and together the two watched Mr. Burnett from the office area at the front of the store. As Mr. Burnett walked toward the front of the store, he noticed the two managers and felt they were watching him. Accordingly, Mr. Burnett got in line at a checkout stand. As soon as Mr. Burnett felt he was no longer being watched, he got out of line and walked quickly toward the door with the merchandise.

The two managers then confronted Mr. Burnett and asked him to come with them to their office. As the three walked toward the office, Mr. Rompus called out to another employee at the front of the store, telling her to call the police. As the group reached the office area, Mr. Burnett turned and "broke" toward the exit, dropping the beer and cigarettes as he ran. Mr. Rompus yelled "stop him—see if you can stop him," in an effort to engage the assistance of others. Responding to the call for help, another employee attempted to stop Mr. Burnett by assuming a football blocking stance in the aisle. Mr. Burnett dodged this employee, turning in a different direction, and as he did so, ran directly into another employee. Mr. Burnett "bounced" off this employee directly into the plaintiff, Mrs. Steffensen, who was standing at the customer service counter writing a check. The force of the collision knocked Mrs. Steffensen to the ground, where she struck her head on the tile floor. Mrs. Steffensen was taken to the hospital and has since suffered severe "stroke-like" paralysis to the entire left side of her body.

Subsequently, Mrs. Steffensen commenced this action against Smith, claiming Smith was negligent in dealing with Mr. Burnett and that this negligence caused her injury. At the conclusion of the presentation of evidence, defense counsel moved for a partial directed verdict on the grounds that Smith's failure to deter Mr. Burnett from shoplifting could not, as a matter of law, be a proximate cause of Mrs. Steffensen's injuries. The trial judge granted the motion and incorporated this ruling in his instructions to the jury. At the conclusion of trial, the judge submitted written interrogatories to the jury. After deliberation, the jury found Smith had acted negligently, but Smith's negligence did not proximately cause Mrs. Steffensen's injury.

## I. PROXIMATE CAUSE

Mrs. Steffensen's first claim of error is the trial court improperly granted Smith a partial directed verdict on the element of proximate causation. During the trial, Mrs. Steffensen proceeded on two theories of negligence. First, Mrs. Steffensen asserted Smith had been negligent in failing to train its employees to use techniques to "deter" Mr. Burnett from shoplifting and, alternatively, that Smith's employees negligently failed to utilize these techniques in dealing with Mr. Burnett. Second, Mrs. Steffensen claimed Smith was negligent in chasing and attempting to stop Mr. Burnett after he broke away and ran. Mrs. Steffensen argued that both of these acts of negligence endangered the safety of Smith's customers and ultimately caused her injuries.

At the close of evidence, Smith asked the trial judge for a partial directed verdict, ruling that as a matter of law, even if its employees had been inadequately trained about the need for deterrence and failed to utilize deterrence, such failure was not the proximate cause of Mrs. Steffensen's injury. The trial court granted Smith's request and instructed the jury that all Smith's conduct prior to the stop and detention of Mr. Burnett should not be

considered by the jury:[1]

> You have heard testimony regarding events that occurred prior to the time of the stop of the shoplifter, Mr. Burnett. You are instructed that none of the actions of the Smith's employees prior to the stop and detention proximately caused plaintiff's injuries.
>
> Therefore, you must not take this testimony into consideration when deliberating and making your decision.

 A directed verdict is only appropriate when the court is able to conclude that reasonable minds would not differ on the facts to be determined from the evidence presented. *Management Comm. v. Graystone Pines, Inc.*, 652 P.2d 896, 897–98 (Utah 1982). A directed verdict cannot stand when, reviewing the evidence in a light most favorable to the losing party, "there is a reasonable basis in the evidence and in the inferences to be drawn therefrom that would support a judgment in [the losing party's] favor." *Id.* at 898; *see Penrod v. Carter*, 737 P.2d 199, 200 (Utah 1987).

Mrs. Steffensen claims the trial judge's jury instruction concerning pre-apprehension evidence was improper because reasonable minds could differ as to whether a failure to "deter" Mr. Burnett from shoplifting was the proximate cause of her injuries.

 In Utah, a negligence claim requires the plaintiff to establish four elements: that the defendant owed the plaintiff a duty; that defendant breached the duty (negligence); that the breach of the duty was the proximate cause of plaintiff's injury; and that there was in fact injury. *Reeves v. Gentile*, 813 P.2d 111, 116 (Utah 1991). Proximate cause is "that cause which, in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury." *State v. Lawson*, 688 P.2d 479, 482 & n. 2 (Utah 1984). Further, there can be more than one proximate cause of an injury so long as each is a concurrent contributing factor in causing the injury. *See Anderson v. Parson Red–E–Mix Paving Co.*, 24 Utah 2d 128, 467 P.2d 45, 46 (1970); *Jacques v. Farrimond*, 14 Utah 2d 166, 380 P.2d 133, 134 (1963).

 It is well established that the question of proximate cause is generally reserved for the jury. *Godesky v. Provo City Corp.*, 690 P.2d 541, 544 (Utah 1984); *Ostler v. Albina Transfer Co., Inc.*, 781 P.2d 445, 451 (Utah App.1989), *cert. denied*, 795 P.2d 1138 (Utah 1990). Only in rare cases may a trial judge rule as a matter of law on the issue of proximate causation.

This principle is illustrated by several Utah Supreme Court decisions. In *Harris v. Utah Transit Authority*, 671 P.2d 217 (Utah 1983), the passenger of a jeep brought an action against a bus company and the jeep driver for injuries sustained in a traffic accident. The trial court granted the bus company a directed verdict, instructing the jury that if they found the jeep driver should have observed the bus prior to the accident, they must find, as a matter of law, that the jeep driver was the

---

1. Although the trial judge both granted a directed verdict and incorporated his ruling in the court's jury instructions, we conclude the ruling is most accurately characterized as a partial directed verdict. A directed verdict makes a *determination as to an element of a cause of action, and takes such determination from the* purview of the jury—as was done here. The Utah Supreme Court characterized the same action of a trial judge as a directed verdict in *Harris v. Utah Transit Auth.*, 671 P.2d 217, 219 (Utah 1983). In *Harris*, a personal injury action stemming from a jeep-bus collision, the trial judge instructed the jury that if they found that the defendant jeep driver should have observed the bus, then they must conclude, as a matter of law, the jeep driver was the sole proximate cause of the collision, thereby precluding liability stemming from the bus driver's actions. *Id.* On appeal, the Utah Supreme Court recognized that this instruction was in fact a directed verdict and treated it as such. The trial judge's ruling in this case is indistinguishable from the ruling in *Harris*, and therefore we likewise consider the trial court's ruling a directed verdict and review it accordingly. *See also Cerritos Trucking Co. v. Utah Venture No. 1*, 645 P.2d 608 (Utah 1982) (motion for directed verdict tests the sufficiency of the evidence).

sole proximate cause of the accident. On appeal, the plaintiff claimed that a jury could infer that the bus negligently contributed to the accident and pointed to allegations that the bus stopped too rapidly, failed to drive out of the lane of traffic, and had faulty brake lights. *Id.* at 220. The Utah Supreme Court agreed with the plaintiff and reversed the directed verdict. The *Harris* court held it improper for the trial judge to have taken the issue of proximate cause from the jury. The court explained: "Where the evidence is in dispute including the inferences from the evidence, the issue should be submitted to the jury." *Id.*

Likewise, in *Jensen v. Mountain States Telephone & Telegraph Co.*, 611 P.2d 363 (Utah 1980), the trial judge granted defendant summary judgment on the issue of proximate cause in an action where the plaintiff had been injured in an automobile accident. The plaintiff claimed he was unable to see approaching traffic in executing a left-hand turn because a van owned by the defendant utility company negligently blocked his view by remaining in the intersection, and this was an intervening proximate cause of the accident. On appeal, the Utah Supreme Court reversed the summary judgment on the issue of proximate cause. The court held that the issue of proximate cause may only be taken from the jury where reasonable minds could not differ as to what "was or was not the proximate cause of the injury." *Id.* at 365 n. 4. The court concluded that *"in a situation involving independent intervening cause, the primary issue is one of the foreseeability of the subsequent negligent conduct of a third person, and in this case, [the issue of proximate cause] must be resolved by the finder of fact."* *Id.* at 365 (emphasis added).

In *Mitchell v. Pearson Enterprises*, 697 P.2d 240 (Utah 1985), the Utah Supreme Court upheld the trial court's summary judgment for defendant on the issue of proximate causation because the court found *no evidence* of proximate cause and determined that, without evidence, the issue would have been left to juror speculation. In *Mitchell*, dependents of a mur-dered hotel guest brought a wrongful death action against the hotel after the deceased had been unexplainedly murdered in his hotel room. Plaintiffs sought to prove that the hotel management was negligent in its security measures and that such negligence proximately caused the murder. On appeal, the Utah Supreme Court upheld the trial judge's summary judgment for the defendant. The court held that because there was no evidence as to how the murderer entered the deceased's room, plaintiffs had failed to show a factual connection between the negligent security measures and the murder. The *Mitchell* court recognized that the murderer could have entered the room in a number of ways, many of which would have had no connection with the hotel's security measures, including by invitation of the deceased. Because plaintiffs bore the burden to show defendant's conduct was a "substantial causative factor that led to the [guest's] death," *id.* at 246, and because plaintiffs had offered no evidence other than mere speculation as to how the murderer got in the room, summary judgment on the issue of proximate causation was proper.

In sum, the issue of proximate cause should be taken from the jury only where: (1) there is no evidence to establish a causal connection, thus leaving causation to jury speculation, or (2) where reasonable persons could not differ on the inferences to be derived from the evidence on proximate causation. *Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 789 P.2d 1040, 1047 (1990) (en banc).

Smith argues that its failure to deter Mr. Burnett could not have been the proximate cause of Mrs. Steffensen's injury because there was not an unbroken causal line between this failure and Mrs. Steffensen's injury. Specifically, Smith argues the act of apprehending Mr. Burnett, Mr. Burnett's decision to run, and Mr. Burnett's physical encounter with Smith's employees, were, as a matter of law, intervening proximate causes and therefore broke the chain of causation flowing from its failure to deter.

■ Smith correctly asserts that "a more recent negligent act may break the chain of causation and relieve the liability of a prior negligent actor under the proper circumstances." *Godesky*, 690 P.2d at 544. However, if the subsequent negligent act is foreseeable to the prior actor, both acts are concurring causes and the prior actor is not absolved of liability. *Id.* The issue is whether the subsequent intervening conduct, either criminal or negligent, was reasonably foreseeable. *Id.* at 545; *Harris*, 671 P.2d at 220. "A superseding cause, sufficient to become the proximate cause of the final result and relieve defendant of liability for his original negligence, arises only when an intervening force was unforeseeable and may be described with the benefit of hindsight, as extraordinary." *Robertson*, 789 P.2d at 1047.[2] The fact that the final act which produces the injury is the criminal conduct of a third party does not preclude the finding that an earlier negligent act was the proximate cause of injury if the criminal conduct was, under the circumstances, reasonably foreseeable. *Robertson*, 789 P.2d at 1047; *Mitchell*, 697 P.2d at 246.

■ First, Smith cannot rely on its own subsequent acts of negligence to break the chain of causation between an earlier act of negligence and the injury. Only the unforeseeable acts of another constitute an intervening proximate cause. *See State v. Marty*, 166 Ariz. 233, 801 P.2d 468, 472 (Ct.App.1990); *People v. Gentry*, 738 P.2d 1188, 1190 (Colo.1987); *State v. Neher*, 52 Wash.App. 298, 759 P.2d 475, 476 (1988), *aff'd*, 112 Wash.2d 347, 771 P.2d 330 (1989). To hold otherwise would allow tortfeasors to escape liability by committing additional acts of negligence following an initial breach of a duty. Therefore, Smith's apprehension of Mr. Burnett and the subsequent chase through the store did not break the chain of causation.

Likewise, we are hesitant to say, as a matter of law, that Mr. Burnett's acts following apprehension broke the chain of causation between Smith's failure to deter Mr. Burnett and Mrs. Steffensen's injury. Substantial evidence before the jury indicated that Smith could have reasonably foreseen a customer would be injured by a shoplifter's decision to run, particularly when, instead of deterring the shoplifter, Smith chose to "play cat and mouse" with him. Certainly Mrs. Steffensen presented evidence on this theory of causation. A closer question is whether any reasonable juror could conclude that the evidence and all reasonable inferences drawn from it show Smith's failure to deter was a contributing cause of Mrs. Steffensen's injury.

In this case, Mrs. Steffensen introduced substantial expert testimony that, in dealing with shoplifters, deterrence measures prevent shoplifting and thus promote customer safety. During trial, Mrs. Steffensen presented testimony from security and shoplifting experts who testified that Smith's employees failed to use reasonable means to handle Mr. Burnett, a suspected shoplifter, sufficient to protect the safety of the store's customers. These experts identified two specific and generally accepted techniques that retail stores employ when dealing with shoplifters and which Smith failed to implement. First, the experts testified that a retail store should take steps to "deter" a suspected shoplifter from carrying out his or her plan by taking such affirmative action as making direct eye contact with the suspected shoplifter, approaching the suspected shoplifter and offering assistance, and calling for security over the public intercom system. Second, the experts testified that a retail store should also train its employees to use care when apprehending a shoplifter. The experts agreed that employees should not chase or use force with a shoplifter who becomes violent or flees. These experts testified that stores employ, or should employ, such techniques primarily to protect the safety of their customers and to prevent incidents precisely like the one which

---

**2.** *See also George v. LDS Hosp.*, 797 P.2d 1117 (Utah App.1990) (in wrongful death action, trial court improperly took proximate cause from jury on grounds that nurses' failure to notify doctors of patient's worsening condition was not proximate cause because of subsequent intervening negligence).

occurred in this case.[3] In addition, Mrs. Steffensen submitted copies of Smith's employee training manuals which advocated deterrence when dealing with shoplifters.[4] Mr. Burnett was, in fact, deterred when he thought Smith's employees were watching while he was in the store. He went to get in the checkout line and waited there until he believed he was not being watched. Further, Mrs. Steffensen's experts testified that approximately five percent of all shoplifters, when apprehended, run. They likewise testified that the proper use of deterrence techniques can reduce this number by reducing the number of shoplifters as a whole.

▇ Thus, we are hesitant to uphold the trial court's ruling that, as a matter of law, Smith's failure to deter Mr. Burnett was not a contributing proximate cause of Mrs. Steffensen's injury. There was probably sufficient evidence produced from which a reasonable juror could infer that Smith's failure to deter was a negligent act,[5] as it would have been reasonably foreseeable to an adequately trained employee that his or her decision to apprehend the shoplifter in a crowded store could have led to a customer's injury.

▇ However, this does not end our inquiry. If the trial court's partial directed verdict was harmless error, we need not reverse. *See* Utah R.Civ.P. 61 (1991); *State v. Verde*, 770 P.2d 116, 120 (Utah 1989). On appeal, the appellant has the burden of demonstrating an error was prejudicial—that there is a "reasonable likelihood that the error affected the outcome of the proceedings." *Verde*, 770 P.2d at 120. Further, in determining whether a trial court's error was harmful, we must look beyond the mere fact of error and consider in totality all the evidence and proceedings below. *See, e.g., Anderson v. Toone*, 671 P.2d 170, 175 (Utah 1983) (erroneous jury instruction not reversible error when considered in light of all instructions and evidence). Although normally we would be reluctant to uphold an erroneous directed

3. Smith's experts also agreed that these techniques—deterrence and refraining from using force or chasing the shoplifter—are valid security methods. Their testimony, however, asserted that Smith's employees had been adequately trained in these procedures and properly followed the procedures during the Burnett shoplifting incident.

4. Smith's employee manuals contain statements advocating the use of deterrence techniques in handling shoplifters:

Make sure that employees on the sales floor are greeting and making eye contact with customers, especially those who are acting suspiciously. Make use of the intercom system by calling for security from time to time. Very effective tool, it gives the potential shoplifter an uneasy feeling that security is in the store.

Similarly, the company manuals also instruct its employees regarding the importance of customer safety in handling shoplifters:

Our company policy is that no employee is to take any action in the apprehension of a shoplifter which will bring harm to himself, to other employees, or to customers. The most important thing to remember about apprehending a shoplifter is that we do not want anyone injured. There is nothing in the store that is worth a person getting hurt for. Use common sense, if the situation can't be properly controlled let the shoplifter go and attempt to get a license number.

5. We recognize the trial judge's decision finding Smith owed Mrs. Steffensen a duty to take reasonable precautions to protect her from the criminal acts of third parties was correct. Since trial, the Utah Supreme Court has visited the issue of a shopowner's duty to protect customers from the criminal acts of third parties. *See Dwiggins v. Morgan Jewelers*, 811 P.2d 182 (Utah 1991). In *Dwiggins*, the Utah Supreme Court adopted section 344 of the Restatement (Second) of Torts, stating landowners have a duty to business invitees to take reasonable steps to protect invitees from the criminal acts of third parties where such acts are reasonably foreseeable. The *Dwiggins* court held where a jewelry store had been robbed only once in ten years, a robbery is not foreseeable. However, *Dwiggins* is distinguishable because the store in question was the most frequently shoplifted store in the Smith's chain. Further, the fact that Smith's employee manuals advocate the safe handling of shoplifters demonstrates Smith did, in fact, foresee such criminal acts. Therefore, we believe the trial judge properly found that because customer injury from shoplifters was foreseeable, the law imposed a duty on Smith to take reasonable measures to protect its customers from injuries resulting from dealing with shoplifters. *See also Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46–49 (Colo.1987) (store owner had a duty to take reasonable security measures to protect customers where store had been subject of armed robbery ten times in past three years) (relied on by *Dwiggins*, 811 P.2d at 183 n. 1).

verdict on harmless error grounds, in this case we cannot ignore the fact that the jury's verdict would not have differed had the trial judge not granted Smith's partial directed verdict.

At trial, Mrs. Steffensen presented substantial evidence of Smith's negligence: the store's failure to deter Mr. Burnett's shoplifting, the negligent apprehension and holding of Mr. Burnett, and the improper pursuit of Mr. Burnett once he ran for the door. The trial court's partial directed verdict removed from the jury's consideration only the portion of this evidence relating to Smith's actions before Mr. Burnett's apprehension. In returning a verdict for the defendant on the remaining evidence, the jury found that although Smith had acted negligently, the negligence did not proximately cause Mrs. Steffensen's injuries. Therefore, the jury must have concluded that either: (1) the post-apprehension negligence was too attenuated and remote from the injury to constitute the proximate cause, or (2) Mr. Burnett's attempt to flee was an unforeseeable superseding proximate cause of the injury. We cannot see how the jury would have reached a different conclusion had it been allowed to consider acts Smith performed, or failed to perform, prior to apprehending Mr. Burnett. Accordingly, we find it highly unlikely the jury would have changed its proximate cause decision had the trial judge submitted to them the issue of Smith's failure to deter Mr. Burnett's shoplifting. Therefore, we find the trial court's partial directed verdict on the issue of proximate causation to be, at most, harmless error.

## II. JURY INSTRUCTIONS

■ Next, Mrs. Steffensen claims the trial court incorrectly stated the law with regard to foreseeability when it instructed the jury concerning her second theory of negligence—the post-apprehension chase. We review challenges to jury instructions under a "correctness" standard. *See Knapstad v. Smith's Management Corp.*, 774 P.2d 1, 2 (Utah App.1989).

■ The trial court's jury instruction number thirty-two charged the jury that:

Foreseeability in these instructions means injury or harm, if any, to a customer which the defendant and its employees could have reasonably anticipated as the natural consequences of their actions, if any, even though they were not able to anticipate the particular injury which did occur. In determining what is foreseeable, you must determine *that the actions by Burnett were predictable* by Smith's employees and not just a mere possibility.

Mrs. Steffensen claims this instruction improperly focused on the particular acts of Mr. Burnett, rather than focusing on shoplifters in general. We agree that the specific identity of the shoplifter is irrelevant to the question of foreseeability. *See Dwiggins*, 811 P.2d at 183 (foreseeability that criminal act will occur establishes duty). However, it is unnecessary for us to reach the merits of Mrs. Steffensen's claim because any error committed by the trial judge was harmless. *See* Utah R.Civ.P. 61 (1991); *Verde*, 770 P.2d at 120 (Utah 1989). The question of foreseeability goes to the issue of negligence, and the jury found Smith negligent. Therefore, any error in defining foreseeability did not affect the jury's verdict.

## III. EXCLUSION OF EXPERT TESTIMONY

■ Mrs. Steffensen's next claim of error is the trial judge improperly excluded portions of her expert testimony. First, the trial court forbade one of Mrs. Steffensen's experts from testifying about Smith's employee training practices as they related to the way its employees handle shoplifters. Second, the trial court did not allow Mrs. Steffensen's expert to give an opinion as to the relative proportion of fault between Smith and Mr. Burnett. Challenges to evidentiary rulings, including the exclusion of expert testimony, are reviewed under a deferential "clear error" standard. *See Davidson v. Prince*, 813 P.2d 1225, 1230 (Utah App.1991); *State v. Kinsey*, 797 P.2d 424, 427 (Utah App.1990). Further, an appellant bears the burden of demonstrating that the excluded evidence could

have influenced the jury to render a different verdict. *Anton v. Thomas*, 806 P.2d 744, 746 (Utah App.1991).

## A. Testimony On Employee Training

Mrs. Steffensen contends the trial court should have admitted expert testimony concerning Smith's failure to adequately train its employees regarding the proper handling of shoplifters, including techniques for deterring shoplifting. At trial, the judge did not permit Smith to introduce this expert testimony on the grounds that Smith's failure to deter Mr. Burnett could not have been the proximate cause of the injury, and therefore the testimony was irrelevant.

■■■ Our resolution of the proximate cause issue relating to shoplifter "deterrence" mandates a finding that if this ruling was error, the error was harmless. Furthermore, the exclusion of any training evidence relating to Smith's employees chasing Mr. Burnett was also harmless as the jury found Smith negligent in its apprehension and chasing of Mr. Burnett.

## B. Testimony Apportioning Fault

■■■ Mrs. Steffensen's final argument is that her expert witness should have been allowed to render an opinion concerning the relative fault of Smith and Mr. Burnett. Smith contends the trial court's ruling was correct because the apportionment of fault requires the expert to render a legal conclusion and is thus inadmissible under Utah law. We agree with Smith that the apportionment of fault requires a legal opinion and, therefore, such a determination should be reserved for the jury.

This court recently considered the question of what expert opinions are permissible as going to the "ultimate issue," [6] and what expert opinions are inadmissible as "legal" conclusions. *See Davidson*, 813 P.2d at 1230–32. In *Davidson*, we held the trial court properly excluded an expert opinion which concluded that the defendant was negligent. In doing so, we stated that

"[q]uestions which allow a witness to simply tell a jury what result to reach are not permitted." *Id.* at 1231. A witness may testify as to the defendant's actions, including whether the defendant acted with care; however, the witness may not consider all the facts and render a final legal conclusion. We find apportionment of fault between parties to be exactly this type of impermissible legal conclusion. It is for the jury to place a legal proportion on the relative faults of the parties. Therefore, we hold that the trial court's exclusion of expert testimony regarding the relative proportion of fault between Smith and Mr. Burnett was correct.

## CONCLUSION

In summary, even if the trial judge improperly invaded the province of the jury by granting Smith a partial directed verdict on the issue of proximate causation, such error was harmless given the jury's finding that Smith's subsequent negligent acts were not the proximate cause of Mrs. Steffensen's injury. Further, any error in defining "foreseeability" for the jury was rendered harmless by the jury's finding that Smith was negligent. Finally, the trial court correctly excluded expert testimony which would have improperly rendered a legal conclusion as to the proportion of fault between Smith and Mr. Burnett. Accordingly, we affirm the jury verdict for defendant.

GREENWOOD and JACKSON, JJ., concur.

---

6. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Utah R.Evid. 704 (1991).